# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: FEBRUARY 14, 2019
NOT TO BE PUBLISHED

Supreme Court of Kentucky FINAL

2017-SC-000607-MR DATE 3/7/19 Kim Redmon, DC

CHRISTOPHER MCCULLUM                                              APPELLANT


V.
ON APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE AUDRA JEAN ECKERLE, JUDGE
NO. 15-CR-000968


COMMONWEALTH OF KENTUCKY                                          APPELLEE


**MEMORANDUM OPINION OF THE COURT**

**AFFIRMING**

In August 2017, a jury convicted Christopher McCullum of murder, first-degree wanton endangerment, and tampering with physical evidence. McCullum appeals as a matter of right[1] and raises three claims of error: (1) the trial court abused its discretion by not striking the testimony of the Commonwealth's rebuttal witness; (2) reversible error occurred when the Commonwealth's rebuttal witness testified as to the veracity of the defendant's statements regarding what occurred at the time of the murder; and (3) palpable error occurred when the victim's wife made improper statements beyond the purview of KRS[2] 532.055(2)(a)(7), which were then inappropriately used by the

---

[1] Ky. Const. § 110(2)(b).

[2] Kentucky Revised Statutes.

Commonwealth during its penalty phase closing argument. Finding no reversible error, we affirm.

## I. Factual and Procedural Background.

On February 25, 2015, Dr. Bruno Aczevedo was driving south on Interstate 71 in Louisville when he saw a gun sticking out of a white construction van. He observed the driver shoot several rounds into the side of a black SUV directly in front of Dr. Aczevedo's vehicle, killing the driver of the SUV, Mukhtar Ahmad. Another driver who had also witnessed the incident recorded the van's license plate number before calling 911. Police quickly learned that the van belonged to an electrical business, and it had been lent to McCullum for subcontractor work that day. Eventually, authorities stopped the van and took McCullum into custody.

At trial, McCullum testified that, at the time of the shooting, he was an alcoholic, addicted to methamphetamine and was suffering from psychosis. He admitted that he had shot and killed the victim; the only contested issue at trial was McCullum's mental state at the time of the shooting. McCullum testified he opened fire because he thought the victim was pointing a gun at him. Both McCullum and the Commonwealth presented expert witness testimony as to McCullum's mental health. After hearing all the evidence, the jury deliberated and found McCullum guilty of all charges and recommended a cumulative sentence of sixty years' imprisonment. The trial court imposed the recommended sentence. This appeal followed.

## II. Standard of Review.

McCullum's claims raised below fall into two categories: (1) preserved claims involving evidentiary rulings, and (2) unpreserved claims. We review preserved objections to evidentiary rulings for an abuse of discretion. *Cox v. Commonwealth*, 553 S.W.3d 808, 814 (Ky. 2018) (citation omitted). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Id.* (citations omitted).

We review unpreserved claims for palpable error. RCr[3] 10.26. In *Commonwealth v. Jones*, 283 S.W.3d 665, 668 (Ky. 2009), this Court discussed palpable error review under RCr 10.26, and summarized that relief is not available unless the error was (1) clear or plain under existing law, (2) more likely than ordinary error to have affected the judgment, and (3) resulted in manifest injustice.

## III.   Analysis.

### A. Commonwealth's Violation of KRE[4] 615.

This issue arose during the testimony of the Commonwealth's rebuttal witness, Dr. Allen. Dr. Allen, an expert witness as to whom separation had been invoked, was called to testify regarding the mental state of McCullum at the time of the shooting. During his testimony, it became clear that Dr. Allen knew of McCullum's trial testimony—that he shot the victim because he

---

[3] Kentucky Rules of Criminal Procedure.
[4] Kentucky Rules of Evidence.

3

thought the victim was pointing a gun at him—prior to being asked about it on the stand. When this became clear, McCullum objected and asked for Dr. Allen's testimony to be struck as a violation of "the rule," KRE 615. The trial court acknowledged that there had been a violation, since, as a separated witness, Dr. Allen should not have been made aware of the defendant's trial testimony. Instead of striking Dr. Allen's testimony, the trial court disallowed further questioning on the issue. On appeal, McCullum argues that it was an abuse of discretion for the trial court not to strike Dr. Allen's testimony.

> KRE 615 states:
>
> At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses and it may make the order on its own motion. This rule does not authorize exclusion of:
>
> (1) A party who is a natural person;
>
> (2) An officer or employee of a party which is not a natural person designated as its representative by its attorney; or
>
> (3) A person whose presence is shown by a party to be essential to the presentation of the party's cause.

Here, when "the rule" was invoked, prior to the commencement of trial, the Commonwealth did not request an exemption for Dr. Allen under KRE 615(3), and thus he was not in the courtroom during McCullum's testimony. Due to his separation, the proper way for the Commonwealth to elicit Dr. Allen's opinion regarding McCullum's new trial testimony would have been to ask hypothetical questions while Dr. Allen was on the stand. *See McAbee v. Chapman*, 504 S.W.3d 18, 28 (Ky. 2016) ("Even experts offering opinions based

4

on the facts of the particular case will usually have access to those facts—via depositions, documents (such as medical records), or hypothetical questions—without being present for the testimony of other witnesses[]").

However, when "the rule" is violated, "a trial court has broad discretion to fashion an appropriate resolution of the issue." *McGuire v. Commonwealth*, 368 S.W.3d 100, 113 (Ky. 2012) (citations omitted). The trial court's decision to limit direct examination of Dr. Allen was reasonable and fair to both parties under the circumstances. No abuse of discretion occurred.

B. Dr. Allen's Comments Regarding His Examinations of McCullum.

During his rebuttal testimony, Dr. Allen opined on whether McCullum was exaggerating or malingering his symptoms, based on his previous examinations of McCullum. McCullum argues that those statements were reversible error as improper testimony regarding the veracity of a witness. "Neither expert nor lay witnesses may testify that another witness or a defendant is lying or faking." *Moss v. Commonwealth*, 949 S.W.2d 579, 583 (Ky. 1997) (citation omitted). At the same time, rebuttal testimony is proper under RCr 9.42(e), and "it is self-evident that rebuttal testimony elicited by the prosecutor is often intended to establish that the defendant's version of events 'wouldn't be correct' and 'would not be true.' That is the function of rebuttal evidence." *Ordway v. Commonwealth*, 391 S.W.3d 762, 789 (Ky. 2013).

The Commonwealth asked its rebuttal witness, Dr. Allen, several questions regarding his two examinations of McCullum over the course of the investigation. Dr. Allen described the tests administered and what the test

5

results suggested about McCullum's mental health. During direct examination, the Commonwealth asked whether the test results suggested "at least exaggerating, possibly malingering" and if Dr. Allen would agree the results "would suggest an element of deception on the part of [McCullum]."[5] Dr. Allen answered affirmatively and further opined that McCullum "did not suffer from a mental illness that prevented him from understanding his actions and ultimately that he would be criminally responsible." Plainly, Dr. Allen's testimony did not improperly characterize McCullum's trial testimony as lying or faking. Rather, Dr. Allen merely rebutted defense expert Dr. Williams' testimony regarding Williams' examinations of McCullum by offering testimony of his own observations and examinations of McCullum. Such rebuttal testimony is permissible, and no error occurred.

C. Victim Impact Statement.

McCullum argues that two statements made by the victim's spouse, Shamy Nabil, require reversal under palpable error review. RCr 10.26. McCullum first contends that Nabil recommended a sentence for McCullum in violation of our holding in *Hilton v. Commonwealth*, 539 S.W.3d 1, 19 (Ky. 2018). Second, McCullum argues that Nabil erroneously gave a "golden rule" argument. *Lycans v. Commonwealth*, 562 S.W.2d 303, 305–06 (Ky. 1978).

---

[5] McCullum was administered the Miller Forensic Assessment of Symptoms Test ("MFAST"). Any MFAST score over 6 suggests exaggeration of your symptoms. Dr. Allen testified that McCullum scored a 12.

KRS 532.055(2)(a)(7) allows the Commonwealth, during the penalty phase of a trial, to offer relevant evidence regarding the "impact of the crime upon the victim or victims, as defined in KRS 421.500, including a description of the nature and extent of any physical, psychological, or financial harm suffered by the victim or victims[.]" In a case such as the present, in which the victim is deceased, the victim's spouse may present victim impact testimony. KRS 421.500(1)(b).

> During Ms. Nabil's victim impact testimony, she stated:
>
> Whether it's twenty years, whether it's fifty years, whether it's a life sentence, I mean, I don't know what tomorrow hides, you know? All I know is you made a choice, you made a decision and it cost, I mean, it has a consequence, part of being a responsible, part of being an adult, is that you have to assume responsibility, you have to own up to your action, that's all I'm asking. I'm not asking for a miserable life, I'm not asking to, for death. I'm not asking, no I'm not, but I just want to make sure that I'm safe, my kids are safe, from that part at least, or like, you know, and you're not going to cause harm again or something else.

In its penalty phase closing argument, the Commonwealth used Ms. Nabil's testimony to state that "no number . . . makes sense to Shamy Nabil." While *Hilton* holds that KRS 532.055(2)(a)(7) does not go so far as to permit a victim to recommend a sentence, Ms. Nabil's statement and the Commonwealth's use of it in its closing argument does just the opposite. 539 S.W.3d at 19. In the above quoted language from Ms. Nabil's testimony, she specifically mentions that she is not asking for a certain type of sentence and even includes in her statement the possibility of twenty years, the statutory minimum for murder. Contrary to the facts in *Hilton*, in which several witnesses stated that they would like to see the defendant receive the maximum sentence, the statements

7

made by Ms. Nabil were not error, nor was the Commonwealth's use of those statements in its closing argument.

Additionally, during her victim impact testimony, Ms. Nabil stated, "let's just put it this way, just try to put my shoes on, deal with three kids, and life while you maintain your status as a responsible adult, parent and just see what it's like." McCullum argues that this statement amounted to palpable error because it invoked the "golden rule" argument which *Lycans* held was improper during criminal sentencing. 562 S.W.2d at 306.

Notably, unlike the statement in *Lycans*, the statement at bar was not made by a prosecutor in closing arguments, but instead made by the victim's spouse while explaining what she went through on a daily basis after her husband was murdered. Ms. Nabil was merely testifying to "[t]he impact of the crime upon the victim[.]" KRS 532.055(2)(a)(7). Her statement, even if construed most favorably to McCullum, was an "offhand remark" and was most likely "not of such significance as to prejudice the jury." *Lycans*, 562 S.W.2d at 306. Additionally, the jury did not recommend life imprisonment, the sentence requested by the Commonwealth in its closing argument. Therefore, while we find no error in Ms. Nabil's victim impact testimony, even if we were to find error, it would not have been so prejudicial as to result in manifest injustice.

## IV. Conclusion.

For the foregoing reasons, this Court finds no error in the issues

8

presented to us. As a result, the judgment of the trial court is affirmed.

Minton, C.J.; Hughes, Keller, Lambert, VanMeter and Wright, JJ., sitting.

All concur.


COUNSEL FOR APPELLANT:

Cicely Jaracz Lambert
Joshua Michael Reho
Daniel T. Goyette
Assistant Appellate Defender
Louisville Metro Public Defender's Office


COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

William Robert Long, Jr.
Assistant Attorney General